# Koons, Appellant, *v.* Swartz.

*Land law—Boundaries—Conflicting testimony—Case for jury.*

1. In an action of trespass for cutting timber where the case turns upon the location of a particular boundary described in the deeds by joinders without course, distances, or named monuments, and the evidence is hopelessly conflicting, the case is for the jury.

*Evidence—Offer of compromise.*

2. Where an offer by a defendant to pay a nominal sum of money is for the mere purpose of compromise, and to avoid trouble and expense of litigation, it cannot be treated as an admission that the sum offered, or any other amount, was due by the defendant to the plaintiff.

Argued March 14, 1911. Appeal, No. 21, March T., 1911, by plaintiff, from judgment of C. P. Cumberland Co., Sept. T., 1910, No. 35, on verdict for defendant in case of James Koons et al. v. Joseph Swartz. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for the alleged wrongful cutting of timber. Before SADLER, P. J.

The opinion of the Superior Court states the case.

The court charged in part as follows:

[The defendant contends that the Rhoads draft embraces all the land bought by Isaac Koons, and which was

devised to his sons, to wit: 317 acres and seventy perches, and that if the seventy-five perch line is extended as claimed by the plaintiff, the tract would have thirteen acres more than he purchased.

Now, there is a fact in connection with this conveyance of Woodburn, that is, the relative date of the conveyance, and the date of the Rhoads draft, which has made a profound impression on us. Woodburn conveyed on April 13. It is insisted by the plaintiff that under the call for the Boyd line he extended to the Hefflefinger corner, which, the defendant contends, if projected as Hemminger did, would add more than thirteen acres to the plaintiff's land, but this draft of Rhoads was made eight days after the conveyance of Woodburn to Koons, and was evidently made for Koons in order to designate and indicate clearly what land he had purchased; it was not made before the deed was made, but was made after the conveyance had been made to Koons, and when he was trying to fix his land, and embraced within its boundaries 317 acres, and it does not extend to the Hefflefinger corner.

The surveyors, Hemminger and Mowery, we have stated before did not find any trees marked on the western lines, as the defendant contends, but Mowery found trees marked on the other lines, that is, on the eastern and northern lines.

Mr. Wetzel: Not on the Rhoads line.

The court: Yes, on the Rhoads line.

Mr. Wetzel: On the east and north, but not on the west.

The Court: Not on the west. The defendant contends, and we think with a great deal of force that if Mr. Rhoads marked trees on the eastern line, and marked them on the northern line, the probabilities are they were marked on the western line.

The burden is on the plaintiff to show the true line between Swartz and Koons, because in order to recover the plaintiff must show that the land where the timber was cut was embraced within the Isaac Koons tract. Now running down this seventy-five perch line would carry you to

a point, according to the draft of Rhoads, at which there was a chestnut oak, at which point you are eight and seven-tenths perches from the Hefflefinger line. At the top of this line, at the northern point, there was a corner found, or a stone heap with a stake in it, seven and eight-tenths perches in. Why was not the line run from the end of the seventy-five perch line to the corner on the top of the mountain.

Mr. Wetzel: Because it is not called for in the Rhoads survey.

The Court: Neither Mowery nor Hemminger, both called in this case to fix the line of Koons tract, testified that in their opinion the line they ran was the true division line between the tracts. The attorney for the plaintiff has said that Mr. Hemminger is a very conscientious man, that he didn't make a draft, and therefore that is the reason he wouldn't testify. But there were two surveyors employed to fix this line, yet neither one comes upon the stand and swears that he believes the line run by him was the true dividing line between this property. Mr. Hemminger, as already stated, exhibited no draft of his work; he gave no opinion as to where the true line was, merely stating that he started at the Hefflefinger corner and ran to the top of the mountain and there established a corner.

Now there is no monument called for in the deed of Woodburn to Koons, that is, there is no corner called for in the deed. The call is for the Boyd line. The draft of Rhoads made subsequently fixes the end of the seventy-five perch line at a chestnut oak; the conveyance of the Boyd heirs to Swartz runs to the chestnut oak, so that all those things are to be taken into consideration by you in determining whether there has been a trespass upon the land of the plaintiff or not.

As has been contended by the defendant, the Act under which this action is brought is a drastic one, imposing a penalty, which is claimed by the plaintiff, and it is incumbent therefore, upon him to show clearly by satisfactory evidence that Swartz was a trespasser by cutting timber

on land which belonged to the devisees of Isaac Koons, including the plaintiff.

On the other hand, the plaintiff contends that the seventy-five perch line should be extended to the Hefflefinger corner; that Swartz admitted this was so when they were attempting to fix the dividing line, and while he contradicts it now a number of witnesses testified otherwise.

It was contended by counsel that if a line had been run from the Hefflefinger corner to the corner found seven and eight-tenths perches east of where Mr. Hemminger and Mr. Mowery came out, that it would include a portion of this cut timber, and probably the larger portion of it, but that would alter all of the courses, and there was no evidence in the case that would justify you in rendering a verdict on a theory like that.

It is also insisted by the plaintiff that the $25.00 offered by Swartz must be taken as an admission that he cut locust to that amount. But we say to you that if he admitted without any qualification that would be true, but if it is true, as Swartz said, that he merely offered the $25.00 to avoid a lawsuit, then it should not be taken into consideration by you in fixing any damages, or as an admission that any timber had been cut.

The plaintiff in this case seeks to recover and the burden is upon him to establish his right to do so by the weight of the testimony, and by satisfactory evidence, else a verdict in his favor would not be justified.

The evidence was to some extent contradictory. You saw and heard the witnesses, and you have thus been enabled to judge of the evidence, and the weight that should be given to their testimony, at least to some extent. Reconcile contradictions where you can, and when this cannot be done, try and find what the truth is. We have referred to the testimony briefly. You will consider it fully—all and every portion of it, and if we have made any mistakes in the citing of it you will correct it. We express no opinion as to the facts. They are for you to find, and you alone.

Under all the testimony, has the plaintiff shown by satisfactory evidence that the defendant cut timber on the Koons tract.  He must establish this before he is entitled to recover.

The defendant, as we have said before, is not bound to show that he owns the disputed strip; or who owns it.  It is incumbent upon the plaintiff to show that it was the land of Koons.

Take the case then; give it due consideration, and render such a verdict as you believe is justified under the evidence of the witnesses, and the law as we have stated it.

Mr. Wetzel: Will you call the attention of the jury to this fact: That the testimony of Mr. Mowery was, and also that of Mr. Swartz, that the largest cut portion of this timber was at the northwestern corner; that if a line were drawn from the Hefflefinger corner, at the south, and run up the mountain to the stone pile on the north, that this timber was still beyond the black line.

The Court: There is no evidence in the case to justify the acceptance by the jury of a theory like that.  You can have an exception.  If you run out to the Hefflefinger corner and then run a line from that to this stone heap at the top of the mountain you would change the courses.

Mr. Wetzel: To the stone corner.

The Court: I mean the stone corner.  There would be no justification for coming to the conclusion that this line might start at the Hefflefinger corner, and take an entirely different course, which you would have to do to reach the stone heap seven and eight-tenths perches east of where Hemminger came out above.  There is no evidence to justify that.

Mr. Wetzel: But I say if you run a line that way, the cut timber would still be west of the black line—the Rhoads line.

The Court: There is no justification for a theory like that.] [10]

Verdict and judgment for defendant.  Plaintiff appealed.

*Error assigned* among others was (10) portion of charge as above, quoting it.

*J. W. Wetzel* of *Wetzel & Hambleton,* for appellant.

*S. B. Sadler,* for appellee.

OPINION BY ORLADY, J., July 13, 1911:

This action of trespass was brought to recover treble damages for timber cut, removed and converted to the use of the defendant, contrary to the Act of March 29, 1824 P. L. 152.   In 1853 John A. Woodburn and wife conveyed to Isaac Koons, a tract of mountain land containing 300 acres, more or less, and described it simply by adjoinders, without courses, distances, or named monuments. The deed called for the land of Robert Boyd, as its western boundary, and the true location of this line is the only question involved in this controversy.   Within a few weeks after the purchase by Koons, he had a survey made by one Rhoades, which gave the courses and distances of his purchase, but in making this survey there were no marks made on the ground on this disputed western line.

During the charge of the court to the jury, in a colloquy with the plaintiff's counsel, the court said, "The defendant contends, and we think with a great deal of force that if Mr. Rhoades marked trees on the eastern line, and marked them on the northern line, the probabilities are, they were marked on the western line." Standing alone this would be reversible error, as there was no question of probability in the case.   The important fact was, where was that line located?   There may, or may not have been reasons for not marking it, and its true location was purely a question of fact to be determined by the jury.

The plaintiff had two surveys made of this property, yet neither one showed any marks on this western line, and his surveyors did not testify that the line as claimed

by the plaintiff was the correct one.  In order to make it the correct line it would have been necessary to have extended both the northern and southern calls of the Rhoades survey about eight perches; and neither surveyor submitted a draft of his work for examination by the jury.

The principal contention on the part of the appellant is that the case was not properly submitted by the trial judge. The court below affirmed the eleven points for charge presented by the plaintiff, and it is apparent that the trial judge accepted the theory of the defendant as the correct one.  It is impossible to preserve or reproduce the manner, accent, gesture and emphasis of a speaker, and the manner in which an instruction is given, and the disputed facts as submitted to the jury must necessarily be left largely to the conscience of the trial judge.  So far as the words used by the trial judge indicate his thoughts the several contentions of the plaintiff and defendant were clearly presented, the court stating, "The evidence was to some extent contradictory.  You saw and heard the witnesses, and you have thus been enabled to judge of the evidence and the weight that should be given to their testimony, at least to some extent.  Reconcile contradictions where you can, and when this cannot be done, try and find what the truth is.  We have referred to the testimony briefly.  You will consider it fully, all and every portion of it, and if we have made any mistake in citing it, you will correct it.  We express no opinion as to the facts.  They are for you to find and you alone."

This case was zealously tried by able counsel and the jury were clearly instructed as to their duty in fixing the true location of the line in dispute.  The evidence was quite confusing and was necessarily for the jury, and their findings that the division line was located as contended for by the defendant, was not so clearly against the manifest weight of the evidence as we have read it, as to warrant a reversal of the judgment.  The answer to the defendant's seventh point was a proper one under the

facts of the case, and the jury were told that if they found that the offer of the defendant to pay a nominal sum of money was for the mere purpose of compromising a demand of the plaintiff, and solely for the purpose of avoiding trouble and expense of litigation, it should not be treated by the jury as an admission that this sum or any other amount was due by the defendant to the plaintiff: Pirhalla v. Duquesne, ante, p. 000. The burden of proof was on the plaintiff to establish the true location of the line, and that the defendant had cut the trees within that line on the Koons tract.

We do not find any reversible error in the record. The judgment is affirmed.